Bettinger *v.* Carl Berke Assoc., Inc. et al., Appellants.

Argued November 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Reeder R. Fox,* with him *Duane, Morris & Heckscher,* for appellants.

*William J. Kennedy,* with him *William A. White,* and *Dechert, Price & Rhoads,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 24, 1974:

In June, 1969, appellee, Edward J. Bettinger, and one of the individual appellants, Carl E. Berke, nego-

tiated an employment agreement whereby Berke began his employment with Bettinger as a salaried salesman in Bettinger's temporary-help division. Berke's duties were to become familiar with Bettinger's business and attempt to expand the temporary-help division. In February, 1970, Berke and Bettinger negotiated a new employment contract that was reduced to writing on March 2, 1970. The contract gave Berke a raise in salary and a promotion to sales manager of the temporary placement division of Bettinger's business. The contract also provided for Berke to receive commissions as of February, 1970, on the gross monthly billings of the temporary-help division. The contract contained the following restrictive covenant: ". . . In the event of termination of employment more than three months after the date hereof, Employee shall not, for a period of one year after the termination of said employment, either directly or indirectly, enter into the employment agency or employment placement business, nor will he enter into the employ of anyone who is engaged in a similar business within fifty miles of City Hall, Philadelphia, Pennsylvania. In the event that Employee engages directly or indirectly, in the employment agency or employment placement business, as employee or otherwise, within said period but beyond said fifty mile radius, Employee shall not solicit employers or employee-applicants which were on Employer's customer lists during the term of this agreement. If Employee violates the provision of this paragraph, then in that event . . . Employee shall forfeit all claim to all commissions otherwise due to him."

During the period from March, 1970, through December, 1972, Berke fulfilled his contractual duties. In December of 1972, Berke entered into competition with Bettinger. Berke also induced the other two appellants, Dorothye R. Herbert and Emily Simon, to leave the employ of Bettinger, where they had previ-

ously been employed without written contracts in the temporary-help division, and come to work for him in his own temporary-help business. Their duties for Berke were the same as their duties had been for Bettinger—the placement of temporary help in accordance with the needs of customers.

In April of 1973, Bettinger filed a complaint in equity, seeking, among other things, to enjoin appellants from competing in the temporary-help field. A hearing was held and the chancellor entered a decree granting the relief sought by Bettinger. Exceptions were argued and denied, the decree was made final and this appeal followed.

Appellant Berke first alleges that the court erred in granting the injunction due to the fact that Bettinger failed to establish irreparable harm. While it is generally true that injunctions will only be issued upon a showing of irreparable harm, we are here dealing with a restrictive covenant in an employment contract. In *Jacobson & Co. v. Int. Environment Corp.*, 427 Pa. 439, 235 A. 2d 612 (1967), we stated: ". . . employment contracts containing general covenants by an employee not to compete after the termination of his employment are prima facie enforceable if they are reasonably limited as to duration of time and geographical extent . . . within such territory and during such time as may be reasonably necessary for the protection of the employer." At page 452.

Consequently, to determine whether Bettinger was entitled to have the restrictive covenant enforced, we need only concern ourselves with the reasonableness of the covenant. To be enforceable, the covenant must meet the three-pronged test laid out in *Jacobson, supra.* The covenant must be (1) reasonable in time, (2) reasonable as to geographical extent, and (3) otherwise reasonably necessary to protect the employer, without imposing an undue hardship on the employee. The rec-

ord supports a finding that the restrictive covenant was reasonable with regard to all three prongs of the test. When asked if Bettinger's company had regularly placed temporary help with the customers on its list, Berke replied: "Not regularly. It's a constant going-back repetitive process in order to keep your contacts, to maintain it, because if you're not doing it, your competition is; and if you're not there and your competition comes in there and talks to these people, the next time they have business is going to be with your competition. So nothing is regular situation unless you keep it regular." Thus, Berke was admitting the crucial importance of customer contact in the business.

Bettinger also testified that it was his experience that if close personal relationships were kept with his customers, they would for the most part turn their entire temporary-help needs over to him. Thus, it is reasonable for Bettinger to seek protection from competition from former employees, like Berke, whose sole job was to maintain the close affiliations with prospective employers of temporary help. Moreover, there was no showing that the restrictive covenant's enforcement would work an undue hardship on Berke. The covenant is only enforceable for a year and during that time, Berke is free to pursue the many other areas of sales and industry with which he is familiar.

In addition, Bettinger reduced the geographic area in which Berke was precluded from working. The original covenant had called for an area of fifty miles from City Hall in Philadelphia. This was reduced to include only the city limits of Philadelphia. Berke was, therefore, free to operate his business in the area adjacent to Philadelphia proper, which was one of the areas that Bettinger, himself, had contemplated as one in which to open a branch office. From these facts, we believe that the chancellor was correct in finding the covenant was reasonable.

Appellant Berke next alleges that the provision in his contract that called for damages (the forfeiture of all commissions due him), if he breached the restrictive covenant, constituted appellee's sole remedy, thus barring appellee from seeking an injunction against him. This argument is without merit. The contract in question did not state that appellee was limited to the single remedy of damages, nor would it be logical that such would be the case. Appellee was seeking protection from Berke's competition and this would not be afforded by damages only. See *Roth v. Hartl,* 365 Pa. 428, 75 A. 2d 583 (1950); Restatement of Contracts. See 378, 384 (2) (1932).

Also involved in this appeal are appellants Dorothye R. Herbert (Herbert) and Emily Simon (Simon) who were former employees of Bettinger. Neither of these two appellants had entered into restrictive covenant agreements with Bettinger. Nevertheless, both were enjoined from working for Berke and were ordered to return certain lists of customers and job applicants to Bettinger and to account for profits made during their employ with Berke.

The chancellor admitted that Herbert and Simon, since they had not signed agreements with restrictive covenants, "may work generally for whomever they please." However, the chancellor explained that he believed that "the conduct of defendants Herbert and Simon in copying lists of customers and applicants and in using the information contained therein to syphon plaintiff's business constitute elements not only of engaging in unfair competition, but with interfering with the lawful contracts of plaintiff."

Whether the customer lists and the lists of applicants for temporary help constitute "trade secrets" entitled to protection depends upon whether they are "the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged," and

whether they were "communicated to [the employee] in the course of confidential employment." *Morgan's Home Equip. Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957), at 624.

The lists involved in the instant case are not the particular secrets of Bettinger. The record revealed that individuals seeking temporary office work registered with all employers who provided that service and that the names of companies who were in the market for temporary help were widely known throughout the industry. Consequently, lists of either group of names were not entitled to protection. See *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 213 A. 2d 769 (1965). Therefore, the injunction decreed against Herbert and Simon was in error.

Decree affirmed as to Berke; decree reversed as to Herbert and Simon. Each party to bear own costs.

Mr. Justice MANDERINO concurs in the result.