351 A.2d 250

**SIDCO PAPER COMPANY, Appellee,**

v.

**Eugene AARON a/k/a Eugene G. Aaron, Appellant,**

and

**Grant Paper Company.**

No. 628.

Supreme Court of Pennsylvania.

Argued Oct. 10, 1974.

Decided Jan. 29, 1976.

588

Marvin Comisky, Lawrence C. Hutchings, Blank, Rome, Klaus & Comisky, Philadelphia, for appellant.

Harry M. Sablosky, Norristown, William Brodsky, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a decree in equity granting a preliminary injunction to enforce a restrictive covenant contained in an employment contract. Appellant asserts that the preliminary injunction was improperly issued. We do not agree and therefore affirm.

Appellee, Sidco Paper Company (Sidco), is a Pennsylvania corporation which sells odd lots of low grade printing paper. The area served by the company includes Virginia, West Virginia, Maryland, Delaware, Pennsylvania, New Jersey, New York, Connecticut, Rhode Island, Massachusetts, New Hampshire and the District of Columbia. Grant Paper Company (Grant), a defendant in the action, is a Pennsylvania corporation engaged in the same business, and is a direct competitor of Sidco in the northeastern portion of the United States.

Appellant Eugene Aaron (Aaron) was an employee of Sidco until he left to accept employment with Grant. Aaron was first employed by Sidco at will, under an oral contract, in 1967 when he was seventeen years of age. His initial salary was $60.00 per week. Following a two-year apprenticeship, during which he was exposed to all aspects of Sidco's business and was trained by Sidco salesmen, Aaron executed a written employment contract with Sidco which contained the restrictive covenant at issue here. This contract provided for a term of employment of one year with automatic renewal from year to year, subject to termination by either party upon sixty days' written notice. The covenant provided:

"7. That the Employee agrees during the term of this contract, and for a period of two (2) years thereafter, that he will not be engaged in the same or similar type of business as the Employer is engaged in, in any area of which Richmond, Virginia, is the southern point, Pittsburgh, Pa., the western point, and Boston, Massachusetts, the northern point, and should he do so, the Employer shall be entitled to an injunction to be issued by any Court of competent jurisdiction enjoining and restraining the Employee and each and every other person, firm, associates or corporations concerned therein from the continuance of such employment, service, or other acts in aid of the business of such rival company or concern."

When Aaron ended his employment with Sidco, his territory included Richmond, Virginia; Washington, D. C.; Maryland; Delaware; and Pennsylvania as far west as Chambersburg, excluding Philadelphia, Montgomery, Bucks, Delaware and Chester counties. His salary at this time was $65,000.00 per year, plus expenses which amounted to $18,000.

Following his resignation from Sidco, Aaron immediately took a position as a salesman with Grant. Grant instructed Aaron to solicit business from the same cus-

tomers he had dealt with on behalf of Sidco. Aaron did so successfully. Sidco's business in the territory formerly served by Aaron fell from $490,000.00 in April 1974, the last month of Aaron's employment by Sidco, to $90,-000.00 in May 1974.

The chancellor granted a preliminary injunction enjoining Aaron from serving as a salesman throughout an area described as follows:

"a. Pennsylvania: From the City of Chambersburg, directly north to the New York state boundary, continuing east-southeast along the Pennsylvania-New York state boundary, and then south along the Pennsylvania-New Jersey state boundary; continuing then southwest along the Pennsylvania-Delaware state boundary to its end; from there due west along the Pennsylvania-Maryland state boundary until an intersect is established with the city of Chambersburg, by a line drawn directly south from said city to the Pennsylvania-Maryland state boundary.

b. Maryland: From the city of Hagerstown, directly north until the Maryland-Pennsylvania border, then due east along said border until the state of Delaware, then directly south along the Maryland-Delaware border until a horizontal line can be drawn from Washington, D.C., intersecting the Delaware-Maryland border, then from Washington, D.C., southwest along the Potomac River until a straight line can be drawn due south from Hagerstown to the Potomac River.

c. District of Columbia: Entire area.

d. Virginia-Maryland: From the city of Richmond directly south [sic, north?] until the Potomac River, from said River due east until the Atlantic Ocean. Starting again from the city of Richmond, due east until the Atlantic Ocean.

Notwithstanding, the above enumerated restricted areas and for the purpose of this Interlocutory Decree,

the defendant is entitled to engage in the aforementioned business in the following areas:

a. The states of New York, New Jersey, Delaware, Massachusetts and all other states of the Union.

b. The city of Philadelphia, Pennsylvania.

c. The counties of Bucks, Chester, Delaware, Montgomery in the Commonwealth of Pennsylvania." [1]

Our courts will permit the equitable enforcement of post-employment restraints only where they are incident to an employment relation between the parties to the covenant, the restrictions are reasonably necessary for the protection of the employer, and the restrictions are reasonably limited in duration and geographic extent. *Girard Investment Co. v. Bello*, 456 Pa. 220, 318 A.2d 718 (1974); *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A.2d 296 (1974); *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612 (1967). Before we can determine whether a preliminary injunction was properly issued here, we must first consider appellant's claim that this test was not met. Specifically he attacks both the necessity for protection and the territorial reasonableness of the covenant.

## I

An employer's right to protect, by a covenant not to compete, interest in customer goodwill acquired through the efforts of an employee is well-established in Pennsylvania. See, e. g., *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A.2d 296 (1974) ; [2] *Jacobson*

1. The chancellor denied the prayer for a preliminary injunction to restrain Grant. No appeal has been filed questioning that portion of the decree.

2. In *Bettinger*, Mr. Justice O'Brien, writing for the Court, identified the protected interest as follows:
 "When asked if Bettinger's company had regularly placed temporary held with the customers on its list, Berke replied:
 'Not regularly. It's a constant going-back repetitive process in order to keep your contacts, to maintain it, because if

*& Co. v. International Environment Co.,* 427 Pa. 439, 235
A.2d 612 (1967); [3] *Hayes v. Altman,* 424 Pa. 23, 225 A.
2d 670 (1967); [4] *Albee Homes, Inc. v. Caddie Homes,
Inc.,* 417 Pa. 177, 207 A.2d 768 (1965); [5] *Seligman &*

> you're not doing it, your competition is; and if you're not
> there and your competition comes in there and talks to these
> people; the next time they have business is going to be with
> your competition. So nothing is regular situation unless you
> keep it regular.'
>
> Thus, Berke was admitting the crucial importance of custom-
> er contact in the business.
>
> "Bettinger also testified that it was his experience that if
> close personal relationships were kept with his customers, they
> would for the most part turn their entire temporary-help needs
> over to him. Thus, it is reasonable for Bettinger to seek pro-
> tection for competition from former employees, like Berke,
> whose sole job was to maintain the close affiliations with pro-
> spective employers of temporary help."

455 Pa. 104, 314 A.2d at 298. The covenant was specifically en-
forced.

3. In *Jacobson,* Mr. Justice O'Brien wrote for a unanimous court:
"The evidence makes clear Jacobson's need for the protection.
The radiant heating business is one in which the close personal
contact of the sales representative with prospective buyers is
crucial to success. As appellee points out in his brief, for a
number of years, to the builders, engineers and architects in
the area described by the limited covenant, Kiley *was* Jacobson
& Co."

427 Pa. at 453, 235 A.2d at 620 (emphasis in original). This
Court affirmed the grant of an injunction enforcing the covenant.

4. In *Hayes,* both employer and employee were optometrists and
there was no special training or confidential information involved.
To protect the employer against employee exploitation of custom-
er contacts acquired during his employment, a restrictive cove-
nant prohibited the employee from engaging in a competing busi-
ness in the same city (or its environs) for one year after termina-
tion of the employment. When specific enforcement was sought,
the chancellor denied relief on the ground that the employer had
no protectible interest. This Court reversed the decree and held
the covenant enforceable.

5. In *Albee Homes,* Mr. Justice Eagen wrote for the Court:
"The nature of Albee's business is such that the covenantor
is in a position to know only a very few customers in a limited
area. The testimony shows that the identity of customers was
gained by personal contacts between them and the salesman at
the model home location. That these contacts, gained for in-
stance in Cleveland, Ohio, could be of no use to a salesman
moving to Trenton, New Jersey, is clear beyond question. No
doubt the covenant is enforceable as to an area within 50 miles
of the place of employment by the covenantee, for we can see

*Latz of Pittsburgh, Inc. v. Vernillo,* 382 Pa. 161, 114 A. 2d 672 (1955).[6]

■ The nature of this interest is well stated by Professor Blake:

"In almost all commercial enterprises . . . contact with customers or clientele is a particularly sensitive aspect of the business. . . . In most businesses . . . as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness. . . . [t]he possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own. . . .

a direct and reasonable connection to the protection of business in such a restriction . . . ."

417 Pa. at 185–86, 207 A.2d at 773. The grant of an injunction was affirmed, although only as to a more limited territory than that in the original decree.

6. In *Vernillo*, the employee was a hairdresser and the covenant forbade her for one year after termination of the employment to be employed in or associated with in any way "any beauty or hairdressing establishment or salon . . . which is or may be conducted . . . within a radius of one (1) mile from" her employer's establishment. This Court unanimously affirmed an injunction against violation of this covenant (except as to employment in a capacity other than that of hair stylist or beauty operator) in order to protect the employer's relationships with its customers.

"The employer's point of view 'is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property. Certainly, the argument goes, the employee should have no equity in the custom which the business had developed before he was employed. Similarly, under traditional agency concepts, any new business or improvement in customer relations attributable to him during his employment is for the sole benefit of the principal. This is what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cashbox." [7]

Under our case law, and in view of the factors discussed by Professor Blake, Sidco clearly has a protectible interest in customer goodwill.

## II

Appellant contends (1) that the covenant is unenforceable because its territorial scope is excessive and (2) that it may not properly be enforced in a narrower territory. If accepted, this argument would deny enforcement, not because of any defect 'in the substance of the covenant which is before us, but rather because the covenant attempted to secure to the employer flexibility in where appellant was to be employed.

■■ Our law permits equitable enforcement of employee covenants not to compete only so far as reasona-

---

7. Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 653–54 (1960); accord, 6A A. Corbin, Contracts § 1394 at 98 (1962):
 "Salesmen and solicitors are generally hired and paid a salary in order that they may help to build up custom, getting acquainted with customers and acquiring their good will. A promise to forbear to solicit such customers and to deprive the employer of the advantage of that good will is reasonable." (footnote omitted)

bly necessary for the protection of the employer. *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A.2d 296 (1974); *Reading Aviation Service Co. v. Berolet*, 454 Pa. 488, 311 A.2d 628 (1973). However, where the covenant imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer. *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612 (1967) (unanimous); *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965); *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 206 A.2d 59 (1965) (unanimous); *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957) (unanimous); *Seligman & Latz of Pittsburgh, Inc. v. Vernillo*, 382 Pa. 161, 114 A.2d 672 (1955) (unanimous); see *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A. 2d 296 (1974) (by implication); *Plunkett Chemical Co. v. Reeve*, 373 Pa. 513, 95 A.2d 925 (1953) (unanimously reaching same result by strained construction of contract); *Harris Calorific Co. v. Marra*, 345 Pa. 464, 29 A.2d 64 (1942) (same); *Fisher v. Hager*, 310 Pa. 398, 165 A. 655 (1933) (same); *Monongahela River Consolidated Coal & Coke Co. v. Jutte*, 210 Pa. 288, 59 A. 1088 (1904) (unanimous) (covenant incident to sale of business); *Smith's Appeal*, 113 Pa. 579, 6 A. 251 (1886) (unanimous) (same). The commentators also endorse this rule. 6A A. Corbin, Contracts §§ 1390, 1394, at 104 (1962); 14 S. Williston, Law of Contracts §§ 1647B, 1647C (3d ed. Jaeger 1972); Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 683 (1960).

The reason for this policy is a refusal to allow the employee to profit, at the expense of his former employer, from his wrongful and inequitable conduct. This may readily be seen from the opinion of Mr. Justice EAGEN

596

writing for the Court in *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 186, 207 A.2d 768, 773 (1965):

"[W]e conclude that the wide-spread prohibition envisioned by this restrictive covenant is unrelated to the protection of the employer, and that, therefore, as written, the covenant is unenforceable to the full extent claimed by Albee. [citation omitted]. On the other hand, it is also clear that inducing Albee's employees to terminate and violate their employment contracts and then to work for Caddie within 50 miles of their actual former employment was wrongful and conduct from which Albee should be protected. We also consider the covenant divisible and enforceable when restricted to reasonable geographical limits." [8]

Appellant acknowledges the propriety of partial enforcement but only where the restriction is "divisible." He contends that a covenant is "divisible" for this purpose only when the covenant may be narrowed without adding language not originally contained in the covenant. Indeed our cases have sometimes spoken in terms of divisibility. *Reading Aviation Service, Inc. v. Bertolet*, 454 Pa. 488, 492, 311 A.2d 628, 629 (1973); *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 186, 207 A.2d 768, 773 (1965); *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 225, 206 A.2d 59, 61 (1965). However, appellant ignores our many cases granting partial enforcement of territorial restrictions even when the covenant was not divisible without adding language.

8. The point was expressed colorfully in *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 224, 206 A.2d 59, 60 (1965):
"The fact that there was no evidence that Barb-Lee enjoyed such an extensive franchise did not deprive it of protection in the area the Court believed to be reasonable and sustainable. The man who wildly claims that he owns all the cherry trees in the country cannot be denied protection of the orchard in his backyard. A restrictive covenant, when it comes under the scrutiny of a court of equity, will be held to reasonable geographical and chronological boundaries, according to the realities of the situation."

In *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612 (1967), the defendant employee had covenanted not to compete in New York, Connecticut, New Jersey, Pennsylvania, or Delaware. The chancellor granted an injunction against breach of the covenant limited to a territory in which defendant had been employed—the eastern half of Pennsylvania, the southern half of New Jersey, and New Castle County, Delaware. This Court in an unanimous opinion by Mr. Justice O'Brien affirmed: "There can be no doubt that a court can properly reduce the geographical scope of a covenant." *Id.* at 453, 235 A.2d at 620.[9]

---

**9.** Appellant seeks to distinguish *Jacobson* on the ground that
> "the chancellor in that case did not have to construct an area of restraint; the employee's oral contract, which had preceded his written contract, had related to the 'Philadelphia office' (427 Pa. at 442, 235 A.2d 612), which was the exact and specific area encompassed by the Order of the Court. That area was known and understood by both parties to be the area of the employee's activity *at the time the restrictive covenant was executed.*"

Brief for Appellant, at 18–19.

We hardly see how this distinction aids appellant's argument. The proposed criterion of "divisibility" focuses solely upon the language of the covenant and not at all on the understanding of the parties. Moreover, the proposed distinction actually cuts against appellant. In *Jacobson,* the employee's area of activity was known at the time the covenant was executed and, therefore, the covenant *could* have been appropriately limited at that time. Here Aaron's territory was not fixed at the outset and, in fact, continually expanded throughout the term of the agreement. Thus, it would not have been possible for Sidco to draft a geographical limitation which would both adequately protect its interests and omit all territory· which was unnecessary for its protection.

*Jacobson* is therefore solidly opposed to the position advocated by appellant.

See also *Plunkett Chemical Co. v. Reeve,* 373 Pa. 513, 95 A.2d 925 (1953) (covenant not to engage in the same line of business for one year with no limitation on the territorial coverage of the retraint enforced only in territory in which the employee operated as a salesman); *Harris Calorific Co. v. Marra,* 345 Pa. 464, 29 A.2d 64 (1942) (covenant not to sell competitive goods to customers of manufacturer enumerated on list construed to prohibit competition only as to particular plants enumerated and not other plants operated by same firms); *Fisher v. Harger,* 310 Pa. 398, 165 A. 655 (1933) (covenant not to engage "in the furniture busi-

Most recently, in *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A.2d 296 (1974), the employee had covenanted not to compete within a radius of 50 miles from City Hall, Philadelphia. The employer sought an injunction effective only within the City of Philadelphia. This was granted and we unanimously affirmed. The opinion of the Court,[10] written by Mr. Justice O'BRIEN, relied heavily on the limitation of the injunction to Philadelphia in sustaining its reasonableness.

Thus, *Jacobson, Plunkett Chemical* and *Bettinger* offer strong authority for partial enforcement of a covenant which is not "divisible" in appellant's sense. To counter this authority, appellant offers only *Trilog Associates, Inc. v. Famularo*, 455 Pa. 243, 314 A.2d 287 (1973), and *Reading Aviation Service, Inc. v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973).[11] These offer no support for appellant's position.

*Trilog* is not authoritative for this proposition, because five members of this Court concurred only in the result without joining any opinion,[12] and the two members of

ness at any place within a radius of twenty-five miles from any point . . . where . . . [plaintiff] may be engaged in such business" construed to refer only to places of business in operation at the time of contracting).

10. Although the vote was unanimous, Mr. Justice MANDERINO did not join the opinion but simply concurred in the result.

11. Appellant also cites *Smith's Appeal*, 113 Pa. 579, 6 A. 251 (1886); *Monongahela River Coal & Coke Co. v. Jutte*, 210 Pa. 288, 59 A. 1088 (1904); *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 206 A.2d 59 (1965); and *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965). These cases, however, provide no support for appellant because in each of them partial enforcement *was* granted, though the area of enforcement was defined simply by striking words from the covenant. Any comment on those cases upon a situation where a reasonable area could not be defined in that fashion was thus necessarily dictum.

12. Not only does *Trilog* lack any opinion expressing the view of more than one Justice, but it was also decided that same day as *Bettinger*, an opinion joined by six Justices and inconsistent with appellant's analysis. To the extent of any conflict, it is clear *Bettinger* must control.

But there may be no *conflict*. It is unclear that the conduct involved in *Trilog* would have been actionable under the most

the Court who did write opinions differed on the precise point here at issue.

 *Reading Aviation Service* is distinguishable from the present case. There the covenant had no territorial limitation, although the nature of the business involved (the operation of an airport) was such that the relevant geographical area could have been readily specified at the time the contract was formed. This sort of gratuitous overbreadth militates against enforcement because it indicates an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose. An employer who extracts a covenant in furtherance of such a purpose comes to the court of equity with unclean hands and is, therefore, not entitled to equitable enforcement of the covenant. Here, on the other hand, the covenant was limited to the territory in which Sidco operated. While it was known that Aaron would not cover the entire territory, it was not known when the contract was formed precisely what territory he would cover, so that it was impossible to define in advance any narrower territory which would insure full protection for Sidco.

## III

Sidco properly used a restrictive covenant to protect its customer relationships against appropriation by former employees such as Aaron. The remaining question is whether the preliminary injunction was properly issued in this case. Our standard of review is well established.

narrowly drawn covenant. Mr. Justice Manderino's opinion specifically concluded that defendants had used no confidential customer information belonging to plaintiff and the situation does not appear to have involved appropriation of trade secrets or goodwill. If these were not involved, then the employer had no legitimate interest justifying equitable enforcement of the covenants there involved.

If this view of *Trilog* is correct, then it is consistent with *Bettinger,* but offers no support for appellant's position.

"In *Pa. P.U.C. v. Alleg. Co. Port Auth.*, 433 Pa. 495, 499, 252 A.2d 367, 369 (1969), we stated that: 'It has long been the rule in this Court that on an appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the actions of the court below. [Citing cases.] Moreover, we will not "pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly not applicable. . . ." ' "

*Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 370–71, 301 A.2d 816, 818 (1973); accord, *Zebra v. Pittsburgh School District*, 449 Pa. 432, 436–37, 296 A.2d 748, 750 (1972); *Sameric Corp. v. Goss*, 448 Pa. 497, 499, 295 A.2d 277, 278 (1972); *Community Sports, Inc. v. Denver Rigsby Rockets, Inc.*, 429 Pa. 565, 569, 240 A.2d 832, 834 (1968); *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963).

■ We must decide whether there are "apparently reasonable grounds" upon which the trial court could have concluded that equitable enforcement of the covenant was necessary to protect Sidco against wrongful appropriation of its customer relationships by Aaron. The record reveals that Grant's president told Aaron to "go see the customers that he used to see for Sidco" and that prior to issuance of the preliminary injunction Aaron was, in fact, soliciting the business of those customers. There was also uncontradicted testimony that Sidco's business in the territory formerly served by Aaron had fallen from $490,000 in April 1974, the last month of Aaron's employment by Sidco, to $90,000 in May 1974,

when he began soliciting for Grant.[13] When these two facts are taken together, they provide "apparently reasonable grounds" for a finding that injunctive relief was necessary to prevent irreparable harm to Sidco's customer relationships.

Moreover, the record strongly suggests that Grant's purpose in hiring Aaron was precisely to gain the advantages resulting from his relationships with Sidco's customers. The following exchange occurred during the cross-examination of Grant's president:

"Q Therefore, you could very well hire Mr. Aaron to cover territory outside of the territory I just mentioned, could you not?

A I may not want him for a different territory.

Q But you could if you wanted to?

A I can't answer what I would do if he asked for a different territory. I hired him specifically for what he can do.

Q But the territory your company covers is so vast that you could easily keep him in employment outside of the territory where he served Sidco Paper Company?

A I don't know. *I don't know whether he would be good in any other territory.* You're trying to make me say something which I don't know. I don't know if I would be interested in hiring him for any other territory." (emphasis added)

If Grant were concerned solely with Aaron's energy, innovativeness, dynamic personality and other inherent in-

---

**13.** It is undoubtedly true that some of this loss would have resulted simply from Sidco's loss of Aaron's services even had he not begun soliciting his former customers for Grant. But the impossibility of separating the two sources of injury precludes any adequate remedy in damages. Since the injunction does not purport to require Aaron to return to Sidco's employ, it simply prevents misappropriation of Sidco's customer relationships. Thus the remedy is narrowly tailored to prevent wrongful injury to Sidco without reference to any injury caused simply by Aaron's termination of his employment.

dividual qualities, there would seem little reason to be so concerned with his connections in the particular territory. Aaron's customer contacts, developed on behalf of Sidco and at its expense, appear to be a primary factor motivating Grant to offer him employment. This is an additional basis for the chancellor's decision to grant a preliminary injunction.

Because there are "apparently reasonable grounds" on which the chancellor could have concluded that the preliminary injunction was necessary for the protection of Sidco's legitimate interests, we affirm the decree.

Decree affirmed. Each party pay own costs.

JONES, C. J., and POMEROY, J., join in this opinion.

POMEROY, J., filed a concurring opinion in which JONES, C. J., joins.

NIX, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

POMEROY, Justice (concurring).

I join the opinion of the Court and add this separate statement only to set forth in greater detail my reasons for agreeing with the conclusions reached in that opinion.

This is an appeal under the Act of February 14, 1866 P.L. 28, § 1, 12 P.S. § 1101, from a preliminary injunctive decree partially enforcing an employee's covenant not to compete with his former employer. The restricted scope of our review in cases such as this is well established: "We will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the

rules of law relied on are palpably wrong or clearly inapplicable." *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956).[1] As the majority concludes, the record in this case does disclose "reasonable grounds" for the relief granted, and the chancellor did not err in his interpretation of the applicable law.

I agree with the opinion of the Court that Sidco had a protectible interest in customer good will created by Aaron through his sales efforts on Sidco's behalf. This interest, as I see it, is distinct from any protectible interest which Sidco may have in secrets of its trade or in specialized skills acquired by Aaron under Sidco's tutelage. The observations I made in dissent in *Girard Investment Co. v. Bello*, 456 Pa. 220, 318 A.2d 718 (1974), are equally applicable to the present case:

"We all agree that the applicable law is to be found in Chapter 18 of the' Restatement of Contracts (1932). The specific question before us, therefore, is whether the covenant of non-competition . . . is a reasonable restraint of trade as defined in Restatement § 516(f):

'A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the

---

1. These restrictions as to our scope of review are born of necessity, for we must consider each such case on an incomplete record, without the benefit of an adjudication by the lower court. The grant of a preliminary injunction is not a final determination on the merits of a case, and a formal adjudication, complete with findings of fact, is neither necessary nor appropriate at this stage. Compare Rule 1517 of the Pennsylvania Rules of Civil Procedure.

In the present case, we are further hampered by the absence of an opinion in support of the chancellor's decree. An appeal having been taken from the decree, we should have the benefit of the trial court's reasoning in support of its decision. See Rule 56 of this court.

employee or principal, without imposing undue hardship on the employee or agent.'

". . . Of course, balancing the conflicting interests of employer and employee may compel the conclusion that no restriction, however narrowly limited in time and space, may be reasonable in a particular case. I cannot agree, however, that we confront such a case today.

. . .

"It can hardly be doubted that an employee who, by means of his personal contacts, is in a position to divert a substantial amount of business from his employer may present just as serious a competitive threat as a highly trained specialist; the employer's corresponding need for protection may be just as great. On the other side of the coin, a non-specialist . . . may suffer much less hardship from a restrictive covenant than a trained technician would since the more specialized a man's skills, the more limited may be the job openings available to him in his locality. *See* Restatement, Contracts, § 515, comment *e*. In short, I see nothing in the policy embodied in Restatement § 516 to justify restricting covenants of non-competition to employees who have received advanced technical training from their employers. Nor do I think that our own cases support such a limitation." *Id.* 456 Pa. at 224–227, 318 A.2d at 720–22 (dissenting opinion of Pomeroy, J.).

I am also of opinion that the chancellor properly exercised his discretion in limiting the effective scope of the covenant. Appellant seeks to bring this case within the sweep of our decision in *Reading Aviation Service, Inc. v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973), where we struck down an overly broad restrictive covenant in an employment contract without regard to the possibility that partial enforcement might have served some legitimate interest of the employer. But *Reading v. Aviation*

*Service* is distinguishable on its facts, as Mr. Justice Roberts' opinion points out. There, the covenant was without limitation in both time and space. Here, on the other hand the covenant was limited to a period of two years following the termination of Aaron's employment, and was limited in space to Sidco's trade territory. In this respect, this case is substantially the same as *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 243, 314 A.2d 296 (1974), where we affirmed an injunctive decree partially enforcing a restrictive covenant against a former sales employee.[2]

The unlimited scope of the covenant in *Reading Aviation Service, supra,* suggests an abuse of superior bargaining power and a callous disregard for an employee's interest in pursuing his chosen occupation. I am quite prepared to discourage such deliberate overreaching by striking down such covenants in their entirety.[3] But this extraordinary sanction is not, in my view, justified on the record before us. In the first place, a more narrowly drawn covenant may not have been possible in this

---

**2.** In fact, *Bettinger* and the case at bar are identical in virtually every material respect. In both cases, the defendant employee was hired as a sales representative, and was asked to sign a covenant of non-competition only after he had worked for several months and had become familiar with his employer's operations. In both cases, the covenant was reasonably limited in time, and was limited in space to the employer's trade territory; in both cases, the employer sought to enforce the covenant only in the area actually serviced by the employee. Finally, in both cases, there was evidence that the names of the customers served by the employer and his competitors were widely known throughout the industry. Our decision in *Bettinger* was handed down only last year, and without dissent. I agree with the Court that it is controlling here.

**3.** As we pointed out in *Reading Aviation Service,* if courts indiscriminately rewrite every overly broad restrictive covenant to pare away unwarranted restrictions on employee rights, employers who negotiate such covenants with their employees will be encouraged to insist on the broadest protection they can get, irrespective of an employer's legitimate needs or the hardship imposed on his employees. *Id.,* 454 Pa. at 493, 311 A.2d at 630–31. See 14 Williston, Contracts § 1647C (3d ed. 1972).

case.[4] When Aaron began to work for Sidco his territory was not fixed; it was continually expanded during the period of his employment. It is also worth noting that Sidco did not seek the covenant until after Aaron had completed a two-year apprenticeship, during which he had been systematically exposed to all aspects of Sidco's business and accompanied more experienced salesmen on their rounds. Sidco contends that it has a protectible interest in the knowledge and skills acquired by Aaron during this period. If this contention is correct, then the chancellor might have been justified in enforcing the covenant according to its original terms, for Aaron may use his sales training to Sidco's disadvantage in any area where Sidco does business. As we observed in *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 631, 136 A.2d 838, 846 (1957), an employer is entitled to protection from the use of special training imparted to his employees not only in the solicitation and servicing of former customers, but also "in competition . . . for the patronage of the public at large." Even if Sidco's contention is ultimately rejected, it cannot be said that Sidco's belief that it has a protectible interest in Aaron's sales training is so unreasonable as to warrant stripping the company of whatever other protection it may legitimately claim.

In sum, there is evidence in the record that Aaron's breach of his covenant has already caused Sidco consid-

---

**4.** As Professor Blake points out, " . . . in all but the smallest business it is administratively impossible to tailor each covenant to the particular requirements of an individual employee, to say nothing of revising the covenant with each change of the employee's responsibilities. A comparatively few forms must serve for large numbers of employees in quite different circumstances. Employees themselves may often be suspicious and resentful of unequal treatment. Thus, even when the employer acts in complete good faith, it may happen that in the situation that gets to court the restraint is somewhat more burdensome than would be necessary in the case of the violating party. Yet an injunction may be clearly appropriate." Blake, *Employee Agreements Not To Compete*, 73 Harv.L.Rev. 625, 683 (1960).

erable harm, and is likely to cause further injury. The covenant itself is reasonably limited in time, and is limited in space to Sidco's trade territory. Sidco did not seek an injunction covering the entire area of the covenant; it requested relief only in the area in which Aaron had formerly operated. The case is on all fours with our recent decision in *Bettinger v. Carl Berke Associates, Inc.,* *supra*, note 2. It follows that there exist apparently reasonable grounds for the relief granted below.

JONES, C. J., joins in this concurring opinion.

NIX, Justice (dissenting).

I agree that depending upon the nature of the business, an employer's customer relations acquired through the activities of its salesmen may be a protectible interest sufficient to permit the granting of equitable enforcement of a covenant not to compete at the termination of employment. I also accept in the instant case that a covenant reasonably drawn to effectuate that purpose would have been permissible. It is also true under our cases that where a covenant imposes restrictions broader than necessary to protect the employer's interest, a court in equity under certain circumstances may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer.[1] In my judgment the covenant was unreason-

---

1. While I do not intend to focus upon the propriety of the Chancellor's use of the power to modify a covenant of this nature, I do share many of the views expressed by Mr. Justice Manderino in his dissent. The Court today in embracing its newly found rationale for securing "employer flexibility" dangerously approaches in the instant application a total disregard of the sound admonition expressed by this Court in *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973). Therein we stated:

 "The objection to such a practice is that it tends to encourage employers . . . possessing superior bargaining power over that of their employees . . . to insist upon unreasonable and excessive restrictions, secure in the knowledge that

able in the protection sought for the interest to be protected, both as originally drawn and also as enforced by the Chancellor. I therefore dissent.

The majority predicates its approval of the enforcement of the instant covenant, as modified by the Chancellor, upon a finding of a protectible interest in customer goodwill. While I do not believe that the employer should be restricted in this regard to the extent suggested by the Restatement of Contracts, § 516(f), Comment (h) (1932),[2] cited with approval in *Girard Investment Co. v. Bello*, 456 Pa. 220, 318 A.2d 718 (1974), I do believe that equitable enforcement must not be permitted to restrain the exercise of innate ability even though this quality renders him a unique employee.[3]

the promise may be upheld in part, if not in full." *Id.* at 493, 311 A.2d 630.

Many employees are deterred from testing the legality of unreasonably onerous restrictions because of the expense and vicissitudes of litigation. Thus they are condemned to have legitimate options forever foreclosed because of the fear of a violation of an unreasonable and excessive restriction.

2. That section provides:
"A promise of a former employee will not ordinarily be enforced so as to preclude him from exercising skill and knowledge acquired in his employer's business, even if the competition is injurious to the latter, except so far as to prevent the use of trade secrets or lists of customers, or unless the services of the employee are of a unique character."

3. "A coal shoveler may be an exceptionally useful employee because he has a strong back, powerful muscles, and a knack with tools; but this does not make it reasonable to bind him not to serve a competitor after termination of his employment, even though the strength and skill are developed in the employer's service. The fact that an accountant is a lightning calculator who never makes a mistake and whose judgment as a business adviser is extraordinary does not justify restraining him from using these qualities in another's service after termination of his employment. It is a sound reason for hiring his services for a long period and for paying for them at a high rate; but it does not justify a provision that requires him to remain unproductive and out of a job for any period other than that included within the first employment itself. Such services help to make a business profitable while they are being rendered, and may also be of lasting benefit after the employment ends or after the employee is dead. For breach of a contract

I accept the view that a covenant is justified to protect an interest in customer goodwill acquired through the efforts of an employee, "if a part of the employee's compensated service consists in the creation of the goodwill . . ., *a goodwill that is likely to follow the person of the employee himself.*" 6A Corbin on Contracts, § 1394, 100 (1962) (emphasis supplied). It is under this reasoning I conclude that Sidco did have a protectible interest.

By the very nature of the interest sought to be protected, it is only required that the prohibition prevent interference with those contacts established during the period of the employment and should not prevent the employee from establishing new relationships for another employer where these relationships do not arise from associations which commenced during his original employment.

As originally drafted, the geographical area contained in excess of two thousand (2,000) potential accounts and it was admitted that Aaron had dealings with but two hundred and eighty (280) of this number. Clearly, it was unreasonable to prohibit him from soliciting the other 88% of the potential customers within this area after the termination of his employment with Sidco. Even though as enforced the geographical area was reduced in the order issued by the Chancellor, there is still no indication how many of the potential accounts within the area are in fact accounts with which Aaron had contact as result of his employment with Sidco.

While I recognize that there are businesses where of necessity a geographical limitation must be used, such was not the case here.[4] Aaron was paid on a commission

to render such services, an award of heavy damages may be justified. But after the promised service has been completed, a restriction on further active service requires special justification." 6A Corbin on Contracts, § 1394, 99–100 (1962) (Footnote omitted).

4. Interestingly, the Chancellor recognized the problem even though he ignored it in his order.
 "THE COURT: Why, of course. They do not want their customers disturbed. It's their customer list that they do not

basis computed on the customers he actually serviced. This was not the case of a salesman dealing with the public at large but rather his relationships were with identifiable businesses. Under these circumstances, I find no reason to permit enforcement based upon geographical limits, where the actual customer lists were easily ascertainable, and there is no clear relationship between the geographical area and the actual customer contacts made therein by the employee during his former employment.

MANDERINO, Justice (dissenting).

I dissent. The majority opinion by Mr. Justice Roberts and the concurring opinion by Mr. Justice Pomeroy both concede that a restrictive covenant may be unreasonable at the time the covenant is made, and if so, equity should not enforce such a covenant by rewriting it with reasonable terms. Thus, Mr. Justice Roberts concedes that a "gratuitous overbreadth militates against enforcement because it indicates an intent to oppress the employee and/or to foster a monopoly, . . . ." Mr. Justice Pomeroy concedes that the "unlimited scope"

want disturbed. They do not care if he goes out and makes twenty more customers in that same area, it does not bother them, they say, don't bother my company, don't bother my customers. If you can get twenty more customers on the outside, go ahead, because you are not bothering me, I have my customers. Don't bother my customers that I have.

And you are telling me he cannot touch any of these thousand or two thousand? Either you or I have misunderstood what the purpose of restrictive covenants in the law is.

MR. SABLOSKY: You must understand, Your Honor,—

THE COURT: I never have had one case, I have never had one case before me since I have been on the Bench where they say, please, we do not want him to do any business at all. Everyone has been restrictive where they have the list, been restricted to a customer's list, these are our customers, I do not want him to disturb our customers during this period of time.

This is the first time, Mr. Sablosky, I have had this. You know, there always is a first time, I do not say there isn't. There's always a first time. This is the first time I have had a request for everybody. If that is what you want, and you are telling me this, and I assume that is what you are telling me—"

of a covenant can suggest "an abuse of superior bargaining power and a callous disregard for an employee's interest in pursing his chosen occupation." Such "deliberate overreaching" should be struck down in its entirety according to Mr. Justice Pomeroy.

I agree with these principles, but I disagree with the conclusion that the covenant in this case was reasonable when made. The covenant in this case clearly contained "gratuitous overbreadth" which was bound to be oppressive to the employee *from the moment* it was made. It also clearly disregarded by its terms, *from the moment* it was made, the employee's interest in "pursuing his chosen occupation." The terms of the covenant were absolutely not necessary for the protection of the employer.

The covenant at issue reads as follows:

"That the Employee agrees during the term of this contract, and for a period of two (2) years thereafter, that he will not be engaged in the same or similar type of business as the Employer is engaged in, in any area of which Richmond, Virginia, is the southern point, Pittsburgh, Pa., the western point, and Boston, Massachusetts, the northern point, and should he do so, the Employer shall be entitled to an injunction to be issued by any Court of competent jurisdiction enjoining and restraining the Employee and each and every other person, firm, associates or corporations concerned therein from the continuance of such employment, service or other acts in aid of the business of such rival company or concern."

Neither the majority opinion, nor the concurring opinion, have focused on the terms of the above covenant. Under the covenant, the employee promised "that he will not be engaged in the same or similar type of business as the Employer is engaged in . . ." in a certain described area. This covenant bars the employees from pursuing a similar occupation even if he does so in an

area of the described territory where the employer does no business at all. In addition, as the trial court held, the territory described in the covenant included some states, cities, and counties where the employee himself never worked. For this reason, the trial court refused to enforce the covenant in the states of New York, New Jersey, Delaware, and Massachusetts; in the city of Philadelphia, Pennsylvania; and in the counties of Berks, Chester, Delaware, and Montgomery, Pennsylvania.

Whether a restrictive covenant is an illegal restraint of trade must be determined both at the time the covenant is made and also at the time it *is to be enforced*. If the covenant is unreasonable when made, the illegal restraint begins immediately not when the employee ceases employment. Such a covenant perpetually hovers over the employee, who must act at his peril when considering termination of employment because he does not know whether he will be faced with a law suit challenging his right to obtain new employment, and if challenged by a law suit, whether he will suffer economic harm because a court determines *ex post facto* that he violated a covenant, the limitations of which were not clearly spelled out until after a burdensome and costly law suit. Thus, an employee faced with a covenant barring him from competing anywhere with a former employer lives under a constant threat that if he finds new employment, even in an area not covered by his present employer, he will be faced with litigation. A covenant that is unreasonable *when made* has the effect of illegally restraining trade from that moment, for it is then that it begins its coercive effect on the employee's freedom of choice.

The covenant in this case not only prohibited solicitation of the employer's customers, *see Bettinger v. C. Berke Assoc., Inc.*, 455 Pa. 100, 314 A.2d 296 (1974), but also prohibited the employee from soliciting entirely new customers in geographic locations where he had never worked for the employer.

How was the appellant to know the breadth of the freedom of choice which he had during the term of his employment with the appellee before the handing down of the majority's opinion?

The majority says that an employer should be allowed to write a covenant covering its entire territory because it may not know where the employee will be assigned during the term of his employment. The majority implies that the employer is helpless to do otherwise under such circumstances. That argument simply doesn't hold water. All that an employer need do is write a covenant specifying that the employee will not be permitted to compete by soliciting any of the employer's former customers, or perhaps, that the employee will not be permitted to compete in any city, or specific area, in which the employee has worked for the employer. Drawing such a covenant is not a difficult matter. The employee then, *during the course of his employment,* would know exactly what limitations have been placed on his freedom of choice should he decide to terminate his employment. In the present case, had the covenant been written to prohibit the employee from soliciting former customers, or from competing in the cities or areas where he had worked, the employee would have known that he was free to terminate his employment and engage "in the same or similar types of business" in many places which were illegally included in the present covenant.

The view I have taken presents no unrealistic burden on employers, yet at the same time avoids illegal restraints of trade when covenants are made and when enforcement is sought. If an employer is truly concerned only about protecting its interest, there is no threat to it in writing a covenant that is reasonable when made. The covenant in this case contained restrictions not necessary for the protection of the employer. Restrictions prohibiting the employee from engaging in business in certain territories, whether or not the employee ever did

business in those territories, or whether or not he ever came in contact with customers of his present employer, were not necessary for the protection of the employer. The covenant therefore was an illegal restraint of trade.

Furthermore, a restrictive covenant, even if reasonable when made, would not be entitled to enforcement if at the time enforcement is sought, it would be unreasonable to give effect to the covenant. Circumstances may change during the employee's term of employment. The employee's work territory may have been reduced during the term of his employment. The employer's need for protection may have diminished. Thus, a restrictive covenant might be reasonable in time and territory at the time executed, but unreasonable when enforced. It could well be that under such circumstances enforcement of the original covenant serves no protective purpose for the employer. A covenant, *unreasonable when made*, however, cannot be cured by changed circumstances because to do so would sanction the illegal restraint of trade limiting the employee's freedom of choice during the term of his employment.