**International Settlement Design Inc. v. Hickey**

*Bruce E. Stanley,* for plaintiff.

*Gerald C. Paris, Joseph F. Rodkey Jr.* and *Kent Baldauf Jr.,* for defendants.

FRIEDMAN, *J.,* June 29, 1995—The plaintiff has appealed from this court's order dated March 6, 1995, which essentially denied the preliminary injunctive relief plaintiff sought, although some limited relief was granted. Defendants have filed a cross appeal from that same order.

In its statement of matters complained of on appeal, plaintiff refers to the court as the chancellor, which term may suggest to some that the instant appeal is from a final adjudication. It is not.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation arises out of the departure of defendants, Gary L. Brant and David J. Hickey from their employment with plaintiff, International Settlement Design Inc. Plaintiff is a corporation "involved in the highly specialized field of structured settlement design and funding." (Complaint, ¶24.) (Representations to the court by counsel for both parties suggest that plaintiff is a kind of middleman or broker between lawyers representing settling litigants and insurance companies or other designers and providers of the kinds of annuities used in structured settlements of personal injury claims.) Both defendants were shareholders, officers and directors of plaintiff, and both were parties to employment agreements with plaintiff. (Complaint, ¶¶7-17.)

Defendants first communicated their intention to leave plaintiff during a meeting with fellow shareholder, board member and officer, Eric P. Rader, which took place on December 21, 1994. They submitted a letter the following day to another shareholder, board member and officer, Steven C. Price, in which they stated their intention to voluntarily terminate their employment with plaintiff as of December 31, 1994. (Complaint, ¶¶18-19.)

Plaintiff commenced this action on January 9, 1995, by a complaint in equity which states claims mostly at law. The complaint was comprised of 10 counts:

(1) Breach of contract against Brant, for failure to provide sufficient notice prior to terminating his employment.

(2) Breach of contract against both defendants, subtitled "anti-piracy."

(3) Breach of contract against both defendants, subtitled "trade secrets."

(4) Tort against both defendants, subtitled "trade secrets."

(5) Tort against both defendants, for tortious interference with advantageous business relations.

(6) Civil conspiracy against both defendants.

(7) Breach of fiduciary duty against both defendants.

(8) Liquidated damages against both defendants.

(9) Specific performance.

(10) Injunctive relief.

Also on January 9, 1995, plaintiff filed its motion for a preliminary injunction as well as motions for expedited discovery and for the preservation of software, documents and things, along with supporting briefs. The discovery and preservation motions were never disposed of by the undersigned, and it is believed counsel for the parties reached an accommodation on those items.

Argument on plaintiff's motion for preliminary injunction was held on February 21, 1995, before the undersigned. Testimony had been submitted via depositions.

On March 6, 1995, an order was issued, with a supporting memorandum, in which plaintiff's request for a preliminary injunction was granted in part and denied in part. The order prohibited defendants "from contacting the entities or individuals indicated on defendants' confidential exhibit 2, 'ISD case income projections,' regarding structured settlements of the cases listed thereon as becoming due on or after March 1, 1995." It also provided that the parties were prohibited

from discussing the dispute with any person or entity, other than among themselves and their legal counsel, and was conditioned on plaintiff's posting a bond of $500,000. The amount of bond was based on the total estimated income from those cases according to the uncontroverted figures in the said exhibit, plus a modest estimate of counsel fees and litigation expenses of $30,000.

Plaintiff filed a motion for reconsideration of the court's order and, after a conference between counsel and the court, an order was issued on March 31, 1995, modifying the March 6, 1995 order, so as to lower the bond plaintiff would have to post by reducing the number of structured settlements affected by the preliminary injunction. In the modifying order of March 31, 1995, plaintiff picked only one case to be subject to the injunction, and the bond amount was reduced to $46,000, representing the maximum value of one contract ($16,000) plus the same amount of estimated counsel fees and litigation expenses which defendants might be entitled to if even that limited injunction had been improvidently granted.

Plaintiff thereafter filed its notice of appeal and defendants filed their cross appeal, objecting to the issuance of any injunction at all.

DISCUSSION OF ISSUES RAISED ON APPEAL

1. *Whether or Not the Covenant In Question (Which Plaintiff Calls the "Anti-Solicitation Provision" and Which the Court in Its Memorandum Described As a Covenant Not To Compete) Was So Overly Broad That Only Substantial Modifications Would Allow It To Be Enforced Under Pennsylvania Law*

In order for a restrictive covenant in an employment contract to be enforceable in Pennsylvania, certain requirements must be met. Those requirements were suc-

cinctly summarized by the Superior Court of Pennsylvania in the case of *Records Center v. Comprehensive Management Inc.,* 363 Pa. Super. 79, 525 A.2d 433 (1987):

"It is well-settled in Pennsylvania that a restrictive employment covenant is valid if it is reasonably limited in duration of time and geographic extent, reasonably necessary to protect the employer without imposing an undue hardship on the employee, ancillary to an employment relation and supported by consideration." *Id.* at 83-84, 525 A.2d at 435.

Both of the defendants in this case had the same covenant in their contracts. (Exhibits A and C to complaint, section 5.) The covenant is almost two and one-half pages in length and will not be repeated in full here. It includes a provision that defendants were not to reveal "confidential information pertaining to the business of the company" at any time during or after their employment. It also provides that defendants were prohibited, "for a period of three years following the termination of [their] employment . . . for any reason other than a termination [by the employer] without cause," from selling or participating in any entity which provides insurance policies or any similar services to those provided by the employer, to any customer that the employer had served within the previous five years. It also states that the provisions are enforceable through specific performance and injunctive relief, in addition to other legal remedies, and provides that if a court finds the provisions unreasonable, they "shall be deemed to be reduced to the extent necessary in the opinion of such court to make them reasonable." There is also an acknowledgement by the employee that "he is fully able to earn an adequate livelihood for himself and his dependents if such covenants should be specifically enforced against him." It goes on to provide a formula for the calculation of damages arising from a breach, in the amount of 10 times the commissions and revenue earned from each service improperly sold in the first 12 months.

The provisions of the restrictive covenant are overly broad and are therefore not enforceable under Pennsyl-

vania law without substantial modification. The geographical scope of the covenant is nationwide, and it covers customers all over the country. The time frame, three years, seems too long given the nature of plaintiff's business. In addition, the method of calculating liquidated damages is so extreme as to suggest that it constitutes an unenforceable penalty.

## 2. Whether or Not the Court, for Purposes of the Demand for Preliminary Injunctive Relief, Properly Declined To Undertake Such Substantial Modifications

It is well-established that a court, in exercise of its equity powers, *may* modify a restrictive employment covenant which is too broad. *Bell Fuel Corp. v. Cattolico,* 375 Pa. Super. 238, 251-52, 544 A.2d 450, 456-57 (1988). However, this power is discretionary, not mandatory. In the case at hand, there was no simple way to modify some of the provisions contained in the clause so as to make it "reasonable" for purposes of *preliminary* relief. For example, although it would be possible to limit the restriction as to time, there was no way to limit it as to geographical area due to the nature of plaintiff's business. To try to modify this clause in that regard would have been a vain and useless act. Furthermore, we sit in equity to try to temper the occasional harshness of law, not to assist oppressive contracts by granting extraordinary preliminary relief.

## 3. Whether or Not Plaintiff Has Met the Requirements for the Issuance of a Preliminary Injunction, i.e., Whether or Not Plaintiff Has Shown All of the Following:

(A) That defendants have breached the covenant in question and will continue to do so unless enjoined.

(B) That the harm to plaintiff is not capable of easy calculation and cannot be redressed in an action at law for money damages.

(C) That greater injury will occur by denying the injunction than by granting it.

(D) That the injunction would restore or preserve the status quo.

Plaintiff's case meets none of the requirements for issuing a preliminary injunction listed above. The one in which plaintiff's case was most deficient is item (B), above: "that the damage not be susceptible to easy calculation and not redressable in an action for money damages." Here, calculation of damages is easy, involving the commissions that might be earned from cases defendants actually worked on. In fact, defendants' confidential exhibit 2 is believed to list all cases which might bear fruit through the end of this year. This ease of calculation of damages was one of the reasons why the court framed the order of March 6, 1995 to cover particular cases which defendants had worked on while employed by plaintiff. As stated in the memorandum opinion dated March 6, 1995, plaintiff had a reasonable expectation of being awarded at least a part of that business. As to future contact with clients, no injunction was appropriate, both because the clause relied on was overly broad, as discussed above, and because the information sought to be protected was not confidential, as will be discussed below.

In addition, plaintiff has not shown that a greater injury will occur by denying the injunction than by granting it, or that the injunction would preserve or restore the status quo. The clients which plaintiff sought to bar defendants from contacting were not exclusive clients. There was no guarantee that those clients would do business with plaintiff in the future, regardless of whether defendants were still working for plaintiff. There was no status quo to preserve. Plaintiff is in

business competition with others in the field (defendants now included), and an extensive injunction as prayed for would only give plaintiff the force of the government behind its competitive effort, prior to a final determination that its restrictive covenant is at all salvageable (by modification) for enforcement purposes.

*4. Whether or Not Plaintiff's Customer Lists and Structured Settlement Proposals Were Created by Plaintiff and Are Protected Trade Secrets Under the Common Law*

Plaintiff argues that its customer lists and structured settlement proposals constituted "trade secrets" under the common law, and were therefore entitled to protection regardless of the validity of the restrictive covenant discussed earlier. The Pennsylvania Supreme Court has defined a trade secret as "the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged," which must be "communicated to [the employee] in the course of confidential employment." *Bettinger v. Carl Berke Associates Inc.,* 455 Pa. 100, 105-106, 314 A.2d 296, 299 (1974).

We have concluded that the information sought to be protected here is not a trade secret. This situation is similar to that in *Bettinger, supra. Bettinger* involved individuals who left their employment at a temporary-help agency to open a competing business. The Pennsylvania Supreme Court concluded that "individuals seeking temporary office work registered with all employers who provided that service and that the names of companies who were in the market for temporary help were widely known throughout the industry. Consequently, lists of either group of names were not entitled to protection." *Id.* at 106, 314 A.2d at 299.

Likewise, the information sought to be protected here does not appear to be "secret." Plaintiff published a brochure which included names of its customers. Its

potential customers were not exclusive. The insurance companies it dealt with in arranging structured settlements were the same ones used by its competitors. There is no basis for giving such information the special protection of preliminary injunctive relief.

5. *Whether or Not Plaintiff's Employment Agreements With Defendants Contain an Enforceable Confidentiality Agreement Regarding Plaintiff's Customer Lists and Structured Settlement Proposals So That These Items Have a Contractual Protection Even If They Are Not Protected Under the Common Law*

Plaintiff's argument that there is contractual protection of its customer lists and proposals also fails because, in order for information to be protected under either the common law or an express contractual provision, it must be a trade secret. *Bell Fuel Corp. v. Cattolico, supra.* Since we have already concluded that the information here does not rise to the level of a "trade secret" as defined in Pennsylvania law, it cannot be contractually protected.

6. *Whether or Not the Court Properly Limited the Injunction to Cases Which Were "Due" After March 1, 1995, and Thereby Excluded From Preliminary Injunctive Protection All Other Cases on Defendants' Confidential Exhibit 2 "ISD Case Income Projections" and Also Excluded "Any Other ISD Cases Not Appearing on the List"*

In plaintiff's statement of matters complained of on appeal, paragraph 8E, p. 6, plaintiff contends that the preliminary injunction should have covered even cases which were not named on the "ISD case income projection" exhibit. Plaintiff points to no part of the record where such other cases might be found. The court

worked with the evidence presented to it and concluded that the only commissions to which plaintiff, rather than defendants, *might* be entitled (assuming another competitor does not actually get the business from those cases), would be those that defendants had worked on at plaintiff's expense, apparently "lobbying" the attorneys whose clients were involved in attempts to settle personal injury litigation and who might therefore be able to use a structured payout as one of the settlement options. Plaintiff's hope for injunctive relief regarding "any other ISD cases not appearing on the list" must await a final adjudication after a full hearing before the chancellor assigned to the case. As to other cases on defendants' confidential exhibit 2 which might have come due *before* March 1, 1995, those were thought to be moot, a belief that was strengthened by plaintiff's motion for reconsideration, and discussions with counsel which led to the modified order which is the subject of the instant appeal.

*7. Whether or Not the Court Correctly Refused To Enjoin the Alleged Civil Conspiracy and the Alleged Breach of Fiduciary Duties Defendants Had As Officers and Directors of the Corporation*

In its complaint, plaintiff based its cause of action in civil conspiracy on its allegations of trade secret violations and tortious interference with business relations. As we have discussed above, plaintiff appears to have no claim for trade secret violations. No claim of civil conspiracy can therefore be based on that allegation. As to the cause of action for tortious interference with business relations, we believe that any damages suffered as a result of such interference can be easily ascertained in this particular business and is compensable by money damages. The tort is therefore not an appropriate subject of preliminary injunctive relief.

Plaintiff's claim that defendants breached their fiduciary duty to the corporation is based on the factual allegation that defendants diverted existing clients away from plaintiff. We believe that injunctive relief was unwarranted, first because plaintiff had no guarantee that it would receive any future business from its past clients, with or without defendants' interference, and, secondly, because we awarded plaintiff protection from competition by defendants as to certain existing contracts, which protection *plaintiff* chose to limit substantially by not posting the full bond required by the court's original injunction.

There is no merit to the suggestion that the preliminary injunction should extend to conduct which would constitute a tort, actionable at law. To the extent a future breach of the fiduciary duties of corporate officers is enjoinable, the preliminary injunction originally awarded arose out of a scenario that would overlap with those duties. No expansion of the preliminary injunction is warranted at this stage.

8. *Whether or Not the Court Erred in Basing the Bond On the Value of the Income To Be Expected From the Cases Which the Court Had Enjoined Defendants From Pursuing, and on Estimated Counsel Fees for the Defense of the Preliminary Injunction*

Plaintiff asserts that the bond set was too high, yet it was based on the amounts of commissions plaintiff claimed were jeopardized by defendants' allegedly wrongful conduct. The values of the cases are apparently fairly well fixed and the commissions from each appear to have been easily computed. If plaintiff seeks to bar defendants from competing for certain business *during the pendency* of the instant litigation, plaintiff must put up a bond which could pay defendants for all possible damage in the event the final adjudication indicates

the injunction was improvidently granted. The actual payout on the bond might be less or more than the amount estimated by the court, but this does not mean it was incorrectly or unfairly computed. Granting plaintiff's request for substantial relief without an adequate bond would amount to giving it very special treatment without any justification. Plaintiff seems to forget that it could eventually *lose* this case on the merits. The bond requirement is designed to protect defendants in that eventuality.

### 9. *Defendants' Issue On Appeal*

In their statement of matters complained of on cross appeal, defendants essentially argue that no preliminary injunctive relief whatsoever should have been awarded to plaintiff. They claim that there was no evidence of potential irreparable harm which warranted the protection of even the one small case which was eventually the subject of preliminary injunctive relief.

Although plaintiff did request that the court reduce the number of protected cases to one, due to its inability to post bond for all of the cases protected under that original order, we do not believe that this means that there was no showing of harm. As previously discussed, defendants were paid by plaintiff to get the business of certain persons and the cases in the original order were those that were most likely to bear fruit. As between plaintiff and defendants only (and not the rest of the world), it would be unfair to let defendants receive the benefit when they did the groundwork on behalf of plaintiff. This very limited preliminary injunction is well-supported by the record.

### CONCLUSION

The limited injunctive relief which we granted to plaintiff was the only relief that was warranted. The restrictive employment covenant was too broad to be

enforced as written and was not susceptible, or deserving, of modification. Plaintiff also did not meet the burden of showing that it was entitled to an injunction as to future customer relations. The customer lists and settlement proposals do not seem to be trade secrets protectable under a contract or under the common law. No injunction was warranted as to the civil conspiracy claims which sound in tort. The order which was originally entered on March 6, 1995 was restricted to the proper number of cases and included the proper amount of bond. The order as modified on March 31, 1995 at plaintiff's request was consistent with the original order. Plaintiff's appeal is without merit.