**Navarro v. Diecidue**

C.P. of Monroe County, no. 1535 Civil 1994.

*Yvonne M. Navarro,* for plaintiff.
*Salvatore P.J. Vito,* for defendant.

O'BRIEN, *J.,* August 20, 1996—

## I. FINDINGS OF FACT

(1) Plaintiff Albert M. Navarro O.D. is a licensed optometrist in the Commonwealth of Pennsylvania and has been engaged in the practice of this profession in Monroe County, Pennsylvania since 1977.

(2) In January 1989, plaintiff employed the defendant Anthony S. Diecidue O.D. to assist him in his professional practice and pursuant to the terms of the employment, the defendant executed a document containing the following language:

"All records of all patients whenever seen by Dr. Diecidue are the sole property of Dr. Navarro and are not to be removed from the office premises at any time." (Plaintiff's exhibit 5.)

(3) When the plaintiff discovered that the defendant had made a computer taped copy of a patient list, consisting in excess of 12,000 names, while still employed with the plaintiff, he dispatched the following memorandum concerning which the defendant acknowledged receipt:

"You shall not, during and after the term of your employment, use or disclose all or any part of the patient files to any person, firm, corporation, association or other entity for any reason or purpose. In the event of a breach or threatened breach of this paragraph, I will pursue all legal remedies available to me including recovery of damages from you." (Plaintiff's exhibit 4.)

(4) Sometime in November 1993, the defendant voluntarily left the employ of the plaintiff. Sometime in 1994, the defendant opened his own practice as an optometrist in East Stroudsburg, Monroe County, Pennsylvania.

(5) Sometime in June 1994, the defendant sent an announcement of the opening of his office to plaintiff's patients which included the following statement:

"Our records show that you are due for an eye examination. Please call for an appointment. (717) 476-1114." (Plaintiff's exhibit 1.)

(6) In response to defendant's notices, the plaintiff received several inquiries for transfer of records and several inquiries as to whether or not he was retiring from the active practice of optometry.

(7) On or about October 4, 1994, in order to correct the misconception created by the defendant's communication to his patients, plaintiff expended the sum of $2,974.79 in a mailing to all his patients informing them that he was still in practice at the same address.

(8) Following the defendant's dispatch of his mailing to the plaintiff's patients, approximately 73 former patients of the plaintiff appeared at the defendant's offices during the period from June through December 1994 to receive professional services. The defendant was paid the sum of $11,240.64 for services rendered to these patients. However, the portion of the services rendered which would have been performed by the plaintiff to these patients amounted to $4,034.21. (See plaintiff's exhibit 8.)

(9) None of the patients enumerated in the foregoing requested the plaintiff to forward their records to the defendant.

(10) During the period from June through December 1994, approximately 53 patients authorized release of their records from the plaintiff to the defendant and appeared at the defendant's office to receive professional services. These patients expended the sum of $13,182.82 for the services rendered. Provided, however, that the sums that would have been paid to the plaintiff for the portion of the services which he would have rendered was $4,984.78. (See plaintiff's exhibit 10.) In arriving at the foregoing figures, the fees regarding Denise Balsama, who testified at trial for the defendant, have been excluded from plaintiff's exhibit 10.

(11) The defendant has complied with the prior order of this court directing him to return the patient list in his possession and to refrain from utilizing it in any manner.

## II. DISCUSSION

On June 24, 1994, the plaintiff filed a complaint against the defendant alleging a count for breach of contract, a count for breach of fiduciary duty and a count for unfair competition and use of trade secrets.

The plaintiff sought both injunctive relief and compensatory damages. Following an evidentiary hearing, this court on July 11, 1994 granted a preliminary injunction enjoining the defendant from utilizing the plaintiff's patient list and directing the defendant to return the patient list to the plaintiff. The defendant complied with these directives. Following the close of the pleadings, a nonjury trial was held primarily to determine the issue of damages.

In *Macbeth-Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 86 A. 688 (1913), our Supreme Court held as follows:

"It may now be accepted as settled law, under the authority of English and American cases, that courts of equity if the facts warrant will restrain an employee from making disclosure or use of trade secrets communicated to him in course of a confidential employment. The character of the secrets, if they be peculiar and important to the business, is not material. They may be secrets of trade, . . . or any other secrets important to the business of the employer. They, however, must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged. . . . The duty of the servant not to disclose the secrets of the master may arise from an express contract, or it may be implied from their confidential relations." *Id.*

In *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957), our Supreme Court held that confidential customer lists are entitled to protection as a trade secret within the meaning of the Macbeth-Evans Rule. In *Bettinger v. C. Berke Assoc. Inc.,* 455 Pa. 100, 105-106, 314 A.2d 296, 299 (1974), our Supreme Court established the following criteria for determining whether customer lists are trade secrets:

"Whether customer lists . . . are 'trade secrets' entitled to protection depends upon whether they are the 'par-

ticular secrets of the complaining employer, not general secrets of the trade in which he is engaged' and whether they were 'communicated to the employee in the course of confidential employment.' "

The evidence in the case at bar clearly establishes that plaintiff's patient lists meet the foregoing criteria.

While counsel for defendant concedes that the defendant made a mistake in utilizing the plaintiff's patient list for his mailing, the defense does dispute the measure of damages recoverable by the plaintiff. It is undisputed that a court sitting in equity can provide a complete remedy to the litigants and award damages where substantiated by the evidence. *Puleo v. Thomas,* 425 Pa. Super. 285, 624 A.2d 1075 (1993). After careful consideration of the evidence, we conclude that the plaintiff has established his entitlement to the mailing costs of correcting the misconception created by defendant's mailing and the professional fees enumerated in plaintiff's exhibits 8 and 10 which would have otherwise come to him. We decline to award any damages for the professional fees enumerated in plaintiff's exhibit 9 as there is no evidence that these patients ever visited the defendant. Further we decline to award punitive damages and attorney's fees as requested by the plaintiff.

### III. CONCLUSIONS OF LAW

(1) Plaintiff's patient lists are trade secrets in that they are particular secrets of plaintiff's professional practice, not general secrets of the profession in which he is engaged, and were communicated to the defendant employee in the course of confidential employment. *Bettinger v. C. Berke Assoc. Inc., supra.*

(2) The plaintiff has established by a preponderance of the evidence that he suffered monetary damages as a consequence of the defendant's violation of his duty not to disclose or utilize the patient list of the plaintiff.

(3) The plaintiff has established by a preponderance of the evidence his entitlement to the costs of the corrective mailing ($2,974.79) and reimbursement for the professional fees he would have received during the period from June through December 1994 from the patients enumerated in plaintiff's exhibits ($4,034.21 and $4,984.78) totaling $11,993.78.

(3) The plaintiff has failed to establish the criteria for the extraordinary relief of an award of punitive damages or attorney's fees. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985).

(4) The defendant having complied with the prior directives set forth in the preliminary injunction issued by this court, there is no evidence of a need for further injunctive relief.

## DECREE NISI

And now, August 20, 1996, the court finds in favor of the plaintiff Albert M. Navarro O.D. and against the defendant Anthony S. Diecidue O.D. in the amount of $11,993.78 together with court costs and interest thereon from December 31, 1994.