NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  16-3591
_____

FRES-CO SYSTEMS USA, INC.

v.

KEVIN A. HAWKINS;
TRANSCONTINENTAL ULTRA FLEX, INC.,
                                                    *Appellants*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-16-cv-04246)
Honorable: Petrese B. Tucker
_____

ARGUED: January 17, 2017

Before:  AMBRO, VANASKIE, and SCIRICA, *Circuit Judges*.

(Filed: June 1, 2017)

John J. DeLaney, III
Delaney McBride
36 Euclid Street
Woodbury, NJ  08096

Richard G. Kass      [ARGUED]
Bond, Schoeneck & King
600 Third Avenue
22nd Floor
New York, NY  10016
        *Counsel for Appellants*

Daniel P. O'Meara    [ARGUED]
Montgomery McCracken Walker & Rhoads
1235 West Lakes Drive
Suite 200
Berwyn, PA  19312
        *Counsel for Appellee*

————————————

OPINION[*]

————————————


**SCIRICA**, *Circuit Judge*

In this appeal, we address the scope of analysis required to grant a preliminary injunction.  In August 2016, Kevin A. Hawkins began working as a sales representative for Transcontinental Ultra Flex, Inc. after spending the previous sixteen years as a sales representative for Transcontinental's direct competitor, Fres-co System USA, Inc. Hawkins's former employer, Fres-co, sued Hawkins and Transcontinental for misappropriation of trade secrets and sought to enforce a non-competition agreement Hawkins signed when he began his employment with Fres-co.  The District Court granted Fres-co a preliminary injunction barring Hawkins from disclosing Fres-co's confidential information and from soliciting twelve clients whom he had serviced while at Fres-co. Hawkins and Transcontinental appealed.

Because we find the District Court did not properly analyze the four factors required to grant injunctive relief, we will remand.  The preliminary injunction will remain in place pending the trial court's reconsideration of the preliminary injunction

———————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

factors.

## I.     BACKGROUND

In September 2000, Fres-co offered Hawkins a position as a sales representative. As a condition of accepting Fres-co's offer, Hawkins was required to sign Fres-co's Confidentiality and Non-Competition Agreement. The Agreement provides, in part:

> During the course of his/her employment, and for a period of one (1) full year after the termination thereof under any circumstance or for any reason, Employee shall not directly or indirectly whether as owner, shareholder, director, partner or employee or in any other capacity:
> a)     compete with Fres-co in any "Line of Business";
> b)     accept employment with or be employed (as an employee, consultant or in any other capacity) by a competitor of Fres-co in any "Line of Business"; or
> c)     solicit business from, contract with, be employed by, or otherwise do business with any customer of Fres-co or assist any other person or entity in doing so in any "Line of Business".
>
> As used in this paragraph "Line of Business" means and includes:
> 1)     the manufacture, design, development, service, distribution or sale of flexible packaging equipment and/or materials for use in packaging any products for which customers or prospective customers of Fres-co have, at any time during the two (2) year period immediately preceding termination of employment, purchased or contracted to purchase equipment and/or materials from Fres-co (or any affiliate of Fres-co) and shall in any event include, but not be limited to Coffee, Pet Food, Agricultural Chemicals and polymers; and
> 2)     any other line of business conducted by Fres-co on the date of termination of employment or then in development by Fresco.

App. 34. Hawkins accepted the offer and entered into the Agreement on September 27, 2000.

Fres-co provides flexible packaging services for a variety of businesses and products, including coffee packaging. During his time at Fres-co, Hawkins was responsible for Fres-co's west coast coffee packaging customers. He served as the

3

primary contact for coffee packaging clients in Washington, California, Hawaii, and Texas. Hawkins's twelve largest customers account for an average of over $1 million each in revenue per year for Fres-co.

On July 29, 2016, Hawkins notified Fres-co's Director of Sales, Kevin McRae, that he was resigning from Fres-co effective August 12, 2016. In response to inquiries from McRae, Hawkins disclosed that he had accepted a position with Transcontinental, another flexible packaging company. Hawkins told McRae he would likely be servicing Transcontinental's coffee packaging customers. When McRae reminded Hawkins of the Agreement, Hawkins refused to confirm he would not solicit Fres-co customers with whom he had worked while at Fres-co, and would not commit to honoring the terms of the Agreement.

Fres-co filed suit against Hawkins on August 4, 2016, alleging breach of contract, misappropriation of trade secrets under the Pennsylvania Uniform Trade Secret Act and the federal Defendant Trade Secrets Act, and interference with existing and prospective contractual relationships. Shortly thereafter, Fres-co amended the complaint to also name Transcontinental as a defendant. The amended complaint seeks injunctive relief and damages.

Fres-co moved for issuance of a temporary restraining order and/or preliminary injunction on August 18, 2016. Fres-co sought an order that would (1) require Hawkins to return any Fres-co records in his possession or control; (2) enjoin Hawkins from using or disclosing any of Fres-co's confidential or proprietary business information and/or trade secrets; and, (3) enjoin Hawkins from soliciting or communicating with any of the

4

top twelve coffee packaging accounts Hawkins served while working at Fres-co. Fres-co attached an affidavit from McRae in support of its motion. Hawkins and Transcontinental opposed the motion and submitted an affidavit from Hawkins denying that he was aware of any Fres-co trade secrets and representing he would not disclose or use any confidential information he learned at Fres-co while working for Transcontinental.

The District Court held oral argument, but did not take any additional evidence. On August 26, 2016, the District Court issued an order granting the relief sought by Fres-co. Under the order, Hawkins was required to return any Fres-co materials remaining in his possession, restrained from using or disclosing Fres-co's "confidential and proprietary business information and/or trade secrets" in his possession, and restrained from "soliciting, contacting, or communicating with any of the top twelve (12) coffee packaging clients that Defendant Hawkins served on behalf of [Fres-co] for the purpose of selling or providing them with competing products or services[.]" App. 1-2. The order emphasizes it does not preclude Hawkins from working in Transcontinental's coffee division, and it does not preclude Transcontinental from soliciting the twelve customers without the involvement of Hawkins. [1]

---

[1] The District Court had jurisdiction based on the diversity of the parties under 28 U.S.C. § 1332. We have appellate jurisdiction over interlocutory orders granting a preliminary injunction under 28 U.S.C. §1292(a)(1). We review the District Court's findings of fact for clear error, legal conclusions *de novo*, and the decision to grant the injunction for abuse of discretion. *Del. Strong Families v. Att'y Gen.*, 793 F.3d 304, 308 (3d Cir. 2015).

5

## II.    ANALYSIS

### A.    Preliminary Injunction Factors[2]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). A party may be granted a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The four-factor test is familiar: a preliminary injunction may issue if (1) the plaintiff shows that it is likely to succeed on the merits; (2) the plaintiff establishes that it is likely to suffer irreparable harm absent issuance of the injunction; (3) the balance of equities does not disfavor granting an injunction; and (4) public interest concerns do not outweigh the interests advanced by issuance of the injunction. *Id.* at 20. The relative strength of the four factors will typically vary, and some may weigh more heavily than others in the trial court's assessment of whether relief is warranted. Thus, there may be circumstances when the plaintiff satisfies the first two factors, but the balance of equities and/or the public interest militate against granting a preliminary injunction. *See, e.g., id.* at 26; *Boucher v. School Bd. of School Dist. of Greenfield*, 134 F.3d 821, 826-27 (7th Cir. 1998) (grant of preliminary injunction vacated where harm to School Board in being prevented from enforcing order expelling the plaintiff-student from school order exceeded damage to student who claimed expulsion violated his First

---

[2] In addition to challenging the District Court's conclusion on whether the preliminary injunction was warranted, Hawkins and Transcontinental contend the District Court erred by failing to require Fres-co to post a bond during the pendency of the injunction. Because Fres-co posted a bond after Hawkins and Transcontinental filed their opening brief, *see Fres-co System USA, Inc. v. Hawkins*, No. 2:16-cv-04246-PBT, ECF No. 25 (E.D. Pa. Oct. 25, 2016), this issue is moot.

Amendment rights). What is imperative in each case where the plaintiff satisfies the first two factors for granting preliminary injunctive relief is that the District Court assess the balance of harms and public interest to determine that immediate injunctive relief is warranted.

### 1.    Irreparable Harm

We begin, as the District Court did, with the likelihood of irreparable harm. The District Court described Fres-co's showing on this factor as "particularly compelling." App. 3. In explaining this conclusion, the District Court first emphasized Hawkins's imminent start date at Transcontinental. App. 3. It then described Hawkins's role for Fres-co as the primary contact for Fres-co's west coast coffee packaging clients, and concluded this position gave Hawkins access to confidential information, including "customer lists, price lists, and marketing and sales strategies." *Id.* It observed that neither Hawkins nor Transcontinental would confirm that Hawkins would not "solicit, contact, or communicate with Hawkins' former Fres-co clients[]" and accordingly determined Hawkins would "begin work as a sales representative, the position he occupied while at Fres-co, and be assigned to solicit his former clients." App. 4. The trial court concluded that, in this position, Hawkins would "likely use his specialized and confidential knowledge to the detriment of Fres-co . . . . and Hawkins' interference with Fres-co's client relationships would cause immediate irreparable harm to Fres-co." *Id.* The District Court next reasoned this type of harm was irreparable because it could not be adequately ascertained or compensated by money damages. *Id.*

Hawkins and Transcontinental challenge the trial court's finding of irreparable

7

harm, arguing there is no imminent threat to Fres-co because Hawkins swore in an affidavit he would not disclose or use any of Fres-co's business or marketing plans while at Transcontinental and because Transcontinental directed him not to use or disclose any of Fres-co's confidential information. We disagree. The District Court did not abuse its discretion in finding a likelihood of irreparable harm on these facts. "[C]ourts considering whether to grant injunctive relief must exercise their equitable discretion in a case-by-case, fact specific manner. A critical aspect of fact-finding in this and other contexts is drawing reasonable inferences from facts in the record." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014). Under the statutes giving rise to Fres-co's causes of action, misappropriation of trade secrets need not have already occurred to warrant injunctive relief; threatened misappropriation is sufficient. 12 Pa. Cons. Stat. Ann. § 5303(a) ("Actual or threatened misappropriation may be enjoined."); 18 U.S.C. § 1836(b)(3)(A)(i) (a court may grant an injunction "to prevent any actual or threatened misappropriation"); *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010) ("the proper inquiry . . . is whether there is sufficient likelihood or substantial threat of a defendant disclosing trade secrets") (internal quotations omitted). Given the substantial overlap (if not identity) between Hawkins's work for Fres-co and his intended work for Transcontinental—same role, same industry, and same geographic region—the District Court was well within its discretion to conclude Hawkins would likely use his confidential knowledge to Fres-co's detriment.

8

## 2. Likelihood of Success

We have long held that a showing of likelihood of success on the merits is a prerequisite to issuance of a preliminary injunction. *See Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) ("The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982))); *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) ("To obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted."). In cases where the moving party has failed to demonstrate it is likely to succeed on the merits, we have denied injunctive relief, without regard for the party's showing as to the other three factors. *See, e.g.*, *Del. Strong Families* 793 F.3d at 313; *Am. Express*, 669 F.3d at 374. Despite the critical importance of this element, the District Court's order does not address Fres-co's likelihood of success.[3]

Defining what constitutes a "likelihood" of success on the merits has proven difficult. We have never required a court to assure itself with certainty that the moving

---

[3] The trial court acknowledges in the order that its analysis focuses on irreparable harm. App. 3. Nonetheless, Fres-co contends we can infer the District Court found Fres-co likely to succeed on the merits from certain stray statements in the trial court's order. In support, Fres-co cites the District Court's statement that "narrow injunctive relief is *further* justified" by the irreparable harm showing, App. 3 (emphasis added), and argues likelihood of success must have been what initially justified relief. Fres-co also cites the trial court's statement that "Hawkins will likely use his specialized and confidential knowledge to the detriment of Fres-co[,]" App. 4. We disagree with Fres-co's characterization of these statements. These statements speak only to irreparable harm, and cannot substitute for findings on Fres-co's likelihood of success.

party will ultimately prevail prior to granting preliminary injunctive relief. And we have held that "[a] 'likelihood' does not mean more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). On the other hand, the Supreme Court has advised that "[i]t is not enough that the chance of success on the merits be better than negligible[,]" and "more than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotations omitted).

The nature of the court's inquiry into whether a party has met this threshold will necessarily vary with the circumstances of each case. But mere assumption that the moving party will prevail is not sufficient. Instead, the trial court should analyze the elements of the movant's claims to determine whether the movant can likely meet each element. *See, e.g.*, *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319–26 (3d Cir. 2015) (analyzing the elements of a claim for trademark infringement or unfair competition under the Lanham Act); *Del. Strong Families*, 793 F.3d at 308–12 (analyzing the constitutionality of Delaware's Elections Disclosure Act under relevant First Amendment precedent); *Am. Express*, 669 F.3d at 366–74 (analyzing the elements of the plaintiff's substantive due process, contract clause, takings clause, and commerce clause challenges to New Jersey's unclaimed property statute); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109–18 (3d Cir. 2010) (analyzing the elements of plaintiff's misappropriation of trade secrets claim under the Pennsylvania Uniform Trade Secrets Act). Of course, at this stage the trial court's conclusions on these elements are preliminary; exploration of the merits for a final determination may well yield new information that influences the court's ultimate consideration of the claims.

Here, the District Court neither mentioned Fres-co's causes of action nor analyzed the elements of any or all of them to determine whether Fres-co is likely to succeed on the merits of its claim. Finding whether Fres-co is likely to succeed on its causes of action requires, *inter alia*, an analysis of the information to which Hawkins had access to determine whether it meets the statutory definition of trade secrets; review of whether Fres-co used reasonable efforts to maintain the secrecy of the information; and analysis of whether the Agreement Hawkins signed with Fres-co was both reasonably necessary for Fres-co's protection and reasonably limited in duration and geographic scope. *See generally* 18 U.S.C. §§ 1836(b), 1839; 12 Pa. Cons. Stat. Ann. §§ 5302, 5303; *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 252 (Pa. 1976).

These are disputed issues. For example, Hawkins and Transcontinental argue the confidential information to which Hawkins allegedly had access does not constitute "trade secrets" for the purposes of Fres-co's claims. Both the Pennsylvania Uniform Trade Secret Act and the federal Defend Trade Secrets Act include statutory definitions of trade secrets.[4] And a significant body of law has developed at both the state and

---

[4] The two statutes provide similar, though not identical definitions, of "trade secrets." The Pennsylvania Uniform Trade Secret Act defines the term as including, *inter alia*:

> Information, including a formula, drawing, pattern, compilation including a customer list, program device, method, technique or process that . . . [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use [and is] the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C.S.A. § 5302. The federal Defend Trade Secrets Act defines "trade secret" as including, *inter alia,* ""all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures,

11

federal level addressing questions such as whether non-technical information, like the customer lists and long-term strategies to which Hawkins had access, qualify as trade secrets under Pennsylvania or federal law. *See, e.g.*, *Bimbo Bakeries*, 613 F.3d at 112–14; *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 424–25 (3d Cir. 2010). All of these considerations were relevant to determining whether Fres-co is likely to succeed on the merits.

Further, the trial court did not address Hawkins and Transcontinental's argument that Fres-co could not prevail on the merits of its breach of contract claim because an earlier opinion by Judge Dalzell of the Eastern District of Pennsylvania concluded a nearly identical Fres-co non-competition agreement was so oppressively overbroad as to render it unenforceable. *See Fres-co Sys. USA, Inc. v. Bodell*, No. Civ.A. 05-3349, 2005 WL 3071755 (E.D. Pa. Nov. 15, 2005).[5] The parties acknowledge the non-competition

---

programs, or codes" provided the owner "has taken reasonable measures to keep such information secret" and the information derives value "from not being generally known . . . and readily ascertainable." 18 U.S.C. § 1839(3).

[5] In *Bodell*, Fres-co sought preliminary injunctive relief against a former coffee packaging sales representative who, after leaving Fres-co, began soliciting Fres-co customers while working for Ultra Flex Packaging Corp. *Id.* at *1–3. Applying Pennsylvania law, Judge Dalzell found Bodell's non-competition agreement was unenforceable for lack of consideration because it replaced an earlier non-competition agreement without any corresponding benefit to Bodell. *Id.* at *3. Although Judge Dalzell concluded the non-competition agreement was "unenforceable on this basis alone," *id.*, he nonetheless proceeded to analyze whether the restrictions were reasonably necessary for the protection of Fres-co and reasonably limited in duration and geographic scope. He concluded the agreement was too broad under both standards, stating the form language covering "at least four industries on three continents" was "unquestionably broader than is necessary to protect any legitimate concerns Fres-co might have[.]" *Id.* at *4. Finally, Judge Dalzell declined to reform the agreement to grant limited injunctive relief, citing the "highly oppressive circumstances" of the agreement and expressing

12

agreements in *Bodell* and this case are similar, if not identical.[6]  Accordingly, Hawkins and Transcontinental argue the doctrine of issue preclusion bars Fres-co from enforcing the Agreement in this case.[7]

We can imagine circumstances in which a defendant's claim of issue preclusion could warrant denial of a preliminary injunction, but those circumstances are limited. The plaintiff moving for a preliminary injunction must only show a likelihood of success on the merits—not that he will certainly prevail or even that he will more likely than not prevail.  Accordingly, a claim of issue preclusion warrants denial of a preliminary injunction only where issue preclusion so obviously applies that the plaintiff cannot meet even the modest likelihood of success standard.

Here, Fres-co contends the issue decided in *Bodell* is not identical to the issue

reluctance to "sanction Fresco's [sic] choice to make all of its 350 employees sign a gratuitously overbroad non-compete lacking in consideration."  *Id.* at *8.

[6] Hawkins and Transcontinental contend the Agreement's restrictive provisions are unchanged from the agreement at issue in *Bodell*.  Appellants' Reply Br. 8.  But there was an essential difference—as Fres-co notes, Hawkins's non-competition agreement was signed in consideration for his employment with Fres-co; whereas Bodell's non-competition agreement simply replaced an earlier agreement without providing any new consideration.  Appellee's Br. 21.

[7] In evaluating the preclusive effect of the federal court's determination of a state law issue in a later action also based upon diversity of citizenship, we apply state law preclusion principles.  *See Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 265 (3d Cir. 2008) ("There is no dispute that Pennsylvania preclusion law governs in this diversity action.").  Under Pennsylvania law, issue preclusion requires: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final adjudication on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with a party in the prior case; (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior case; and (5) the determination in the prior case was essential to the judgment.  *Metropolitan Edison Co. v. Pa. Public Utility Comm'n*, 767 F.3d 335, 351 (3d Cir. 2014); *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

presented in this case because Bodell had experience in the flexible packaging sales industry prior to signing the non-competition agreement; whereas, Hawkins—who did not have similar prior experience—derived all his knowledge and expertise in the field from his time at Fres-co. Fres-co also disputes whether *Bodell*'s finding that the non-competition agreement was oppressively overbroad was essential to the judgment, given the *Bodell* court's separate findings on the issue of consideration. The trial court did not analyze these arguments to determine whether, at this early stage, Hawkins's and Transcontinental's issue preclusion argument was sufficiently persuasive to prevent Fres-co from meeting its burden to a show a likelihood of success on the merits. Of course we take no position on this issue and leave it to the trial court in the first instance.

### 3. Balance of the Equities and Public Interest

Even if we were to find the District Court implicitly ruled in favor of Fres-co as to the company's likelihood of success on the merits, the District Court's silence as to the final two preliminary injunction factors would require remand. The Supreme Court's opinion in *Winter* confirms denial of injunctive relief may be appropriate when the balance of the harms and the public interest weigh against granting an injunction—even if the movant is both likely to succeed on the merits and likely to suffer irreparable harm. 555 U.S. at 23–24. Accordingly, the Supreme Court emphasized the importance of conducting an analysis of these two factors; it criticized as "cursory" the trial court's review of balance of the harms and the public interest when the trial court's opinion included only a single sentence saying it was "satisfied the balance of hardships tips in favor of granting an injunction[.]" 555 U.S. at 26.

14

We have held in prior cases that the balance of harms and the public interest can, depending on the circumstances, weigh in favor of protecting an employer from misappropriation of its trade secrets even when such protection imposes restrictions on an individual's choice of employment. *See, e.g.*, *Bimbo Bakeries*, 613 F.3d at 118–19. But we have also noted the important public interest—particularly acute under Pennsylvania law—"in employers being free to hire whom they please and in employees being free to work for whom they please." *Id.* at 119. The District Court's order does not address these competing interests, nor does it explain how it weighed the potential harm to Fres-co against the potential harm to Hawkins and Transcontinental. Absent any reasoning on these two factors, we cannot determine whether the District Court reasonably exercised its discretion in granting Fres-co injunctive relief.

## B. Appropriate Remedy

The Federal Rules of Civil Procedure require "[e]very order granting an injunction" to "state the reasons why it issued[.]" Fed. R. Civ. P. 65(d)(1)(A). The District Court failed to state the reasons why it issued the injunction with respect to three of the four preliminary injunction factors. The appropriate remedy is to remand for further proceedings. Absent any factual findings or legal analysis as to these three factors, we are limited in our ability to adequately review the conclusions reached by the trial court. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) ("Arguably, factual findings when the court denies a preliminary injunction may serve little purpose when there has been no hearing, but conclusions of law are nonetheless essential and the factual bases on which the conclusions are predicated, whether derived

15

from affidavits or testimony, serve to permit evaluation of the legal conclusions reached by the district court.") (footnote omitted).

The difficulty is compounded by the limited record we have before us. It consists of two affidavits. The affidavits provide conflicting information regarding the nature of the information to which Hawkins had access while at Fres-co, among other issues. While we have stopped short of requiring an evidentiary hearing prior to ruling on a preliminary injunction motion, we have suggested that a trial court should conduct an evidentiary hearing when "consideration of the injunction motion evidently was influenced in some significant degree by credibility issues and factual disputes." *Arrowpoint Capital*, 793 F.3d at 324; *see also Bradley*, 910 F.2d at 1179 (suggesting a hearing, though not required, would provide a "useful forum" for resolving issues disputed in the parties' affidavits and documentary evidence on a preliminary injunction motion). We leave to the District Court's consideration whether this standard calls for an evidentiary hearing in this matter.

## III. CONCLUSION

Because the District Court did not address Fres-co's likelihood of success on the merits, the balance of the equities, and the public interest, we will remand for further analysis of the preliminary injunction factors consistent with this opinion. The preliminary injunction issued by the District Court will remain in place pending reconsideration.